[No. B151167. Second Dist., Div. Four. Sept. 24, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES A. BOWDEN et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Under California Rules of Court, rules 976(b) and 976.1, only the Introduction and Tennant's Prior Juvenile Adjudication and the Disposition portions are certified for publication.

**COUNSEL**

Jeffrey H. Leo, under appointment by the Court of Appeal, for Defendant and Appellant James A. Bowden.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant Vacarro Webster.

David A. Kay, under appointment by the Court of Appeal, for Defendant and Appellant Antwon L. Tennant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz, Ronald A. Jakob and Robert David Breton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

Appellants James A. Bowden, Antwon L. Tennant, and Vacarro Webster were convicted by jury trial of committing residential burglary, home invasion robbery, and false imprisonment of two of the residents by violence or menace. The jury also made firearm findings, and the court found true that Tennant suffered a prior juvenile court adjudication qualifying as a "strike" under the "Three Strikes" law and also served a prior prison term.

The parties raise numerous contentions. All three appellants contend the trial court inadequately investigated juror misconduct, the evidence is insufficient to show false imprisonment by violence or menace as to the second victim, and the trial court misinstructed the jury in four ways. Tennant raises an individual issue concerning failure to advise him that he had a right to testify. Each appellant raises a sentence issue individual to him, and the Attorney General also asserts the court failed to strike or impose sentence for Tennant's prior prison term and awarded excess credits to all three appellants. We remand for resentencing of Tennant on his prior prison term and modify the awards of credit to Bowden and Webster. Otherwise we affirm, finding no merit to the other contentions.

In the published portion of this opinion, immediately following this introduction, we uphold the trial court's finding that Tennant suffered a prior strike within the meaning of the Three Strikes law (Pen. Code, § 667, subds. (b)-(i)) based on a prior juvenile adjudication that Tennant committed robbery. We hold the prosecution was not required to prove the prior robbery was committed while armed with a dangerous or deadly weapon, because the present crimes were committed after the initiative measure known as Proposition 21 deleted that requirement in former Welfare and Institutions Code section 707, subdivision (b) and changed the cutoff date otherwise provided in Penal Code section 667, subdivision (h). (*People v. James* (2001) 91 Cal.App.4th 1147 [111 Cal.Rptr.2d 292].) We also hold the fact Tennant had no right to a jury trial when he suffered the prior adjudication in juvenile

court does not prevent using the prior juvenile adjudication as a strike; on this point we adhere to *People v. Fowler* (1999) 72 Cal.App.4th 581 [84 Cal.Rptr.2d 874], and reject the reasoning of *U.S. v. Tighe* (9th Cir. 2001) 266 F.3d 1187.

### Tennant's Prior Juvenile Adjudication

■ The court found true as alleged against Tennant under the Three Strikes law (Pen. Code, § 667, subds. (b)-(i)) that Tennant suffered a prior adjudication as a juvenile that qualified as a strike, and the court sentenced Tennant as a second strike offender. The prosecution's proof of the prior juvenile adjudication showed the juvenile court found Tennant committed robbery.

To qualify as a strike the offense previously adjudicated in juvenile court must be one listed in Welfare and Institutions Code section 707, subdivision (b). (Pen. Code, § 667, subd. (d)(3)(D); *People v. Garcia* (1999) 21 Cal.4th 1, 15 [87 Cal.Rptr.2d 114, 980 P.2d 829].) *Formerly* Welfare and Institutions Code section 707, subdivision (b)(3) listed "robbery *while armed with a dangerous or deadly weapon.*" (Italics added.) The parties agree the proof presented by the prosecution failed to show the prior robbery was committed while Tennant was armed with a dangerous or deadly weapon. However, Welfare and Institutions Code section 707, subdivision (b) was amended by initiative measure (Proposition 21) on March 7, 2000, to delete the armed requirement. As amended, Welfare and Institutions Code section 707, subdivision (b)(3) lists simply "robbery." The *present* offenses were committed on December 6, 2000, after the amendment.

The Three Strikes law provides in Penal Code section 667, subdivision (h): "All references to existing statutes in subdivisions (c) to (g), inclusive, are to statutes as they existed on June 30, 1993." Tennant contends that because Welfare and Institutions Code section 707, subdivision (b)(3), as it existed on June 30, 1993, required proof that robbery was committed while armed with a dangerous or deadly weapon, the evidence is insufficient to support the finding that Tennant suffered a prior strike.

However, the March 7, 2000 initiative measure also modified the cutoff date of the Three Strikes law. It added Penal Code section 667.1, which provides: "*Notwithstanding subdivision (h) of Section 667,* for all offenses committed on or after the effective date of this act [the March 7, 2000 initiative], all references to existing statutes in subdivisions (c) to (g), inclusive, of Section 667, are to *those statutes as they existed on the effective*

*date of this act, including amendments made to those statutes by this act.*"[1] (Italics added.)

Because the March 7, 2000 initiative measure both (1) changed the cutoff date in the Three Strikes law and (2) changed Welfare and Institutions Code section 707, subdivision (b) to include simple robbery, and the present crimes were committed after the March 7, 2000 amendments, the prosecution's proof that Tennant suffered a prior juvenile adjudication of simple robbery *is* sufficient to prove the strike. *People v. James, supra,* 91 Cal.App.4th 1147, controls. It holds: "sections 667.1 and 1170.125 require that, if the current offense was committed on or after March 8, 2000, a determination whether a prior conviction alleged as a serious felony is a prior strike must be based on whether the prior offense resulting in that conviction was a serious felony within the meaning of the three strikes law on March 8, 2000." (*Id.* at p. 1151.) This application of the March 7, 2000 initiative measure does not constitute an ex post facto law. (*Ibid.*)

 Tennant contends that to give effect to the amendment in the case of a prior juvenile offense that was not listed in Welfare and Institutions Code section 707, subdivision (b) at the time it was committed would be unconstitutional, citing *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] and *U.S. v. Tighe, supra,* 266 F.3d 1187. By relying on these cases he in effect makes the broader contention that because a person previously tried as a juvenile had no right to a jury trial in juvenile court, the prior juvenile adjudication cannot constitutionally be treated as a prior conviction for the purpose of the Three Strikes law. There is no merit to this contention.

Prior to *Apprendi* and *Tighe,* this contention was rejected by *People v. Fowler, supra,* 72 Cal.App.4th 581. The Three Strikes law includes designated prior juvenile court adjudications as strikes. (*Id.* at pp. 584-585; Pen. Code, § 667, subd. (d)(3).) In *Fowler* the defendant argued, like Tennant, that a prior juvenile court adjudication cannot be used as a strike because the juvenile had no right to a jury trial when the juvenile offense was adjudicated. The *Fowler* court rejected the argument. It stated, "It is settled that while certain constitutional protections enjoyed by adults accused of crimes also apply to juveniles (e.g., notice of charges, right to counsel, privilege against self-incrimination, right to confrontation and cross-examination, double jeopardy, proof beyond a reasonable doubt), '. . . the Constitution does not mandate elimination of all differences in the treatment of juveniles.' [Citation.] Thus, juveniles enjoy no state or federal due process or equal

---

[1]The March 7, 2000 initiative measure made the same changes to the initiative version of the Three Strikes law by enacting Penal Code section 1170.125.

protection right to a jury trial in delinquency proceedings. [Citations.] [¶] . . . [¶] By enacting the three strikes law, the Legislature has . . . simply . . . said that, under specified circumstances, a prior juvenile adjudication may be used as evidence of past criminal conduct for the purpose of increasing an adult defendant's sentence. . . . Since a juvenile constitutionally—and reliably (*McKeiver* v. *Pennsylvania* [(1971) 403 U.S. 528, 547 [91 S.Ct. 1976, 1987, 29 L.Ed.2d 647]])—can be adjudicated a delinquent without being afforded a jury trial, there is no constitutional impediment to using that juvenile adjudication to increase a defendant's sentence following a later adult conviction." (*People v. Fowler, supra,* 72 Cal.App.4th at pp. 585-586, fn. omitted.)

In *Apprendi v. New Jersey, supra,* 530 U.S. 466, a jury convicted the defendant of possession of a firearm, a second degree offense punishable by five to 10 years' imprisonment, and the sentencing judge, by a preponderance of evidence, found as a sentencing factor that the defendant committed the offense as a racial hate crime, which increased the punishment to 10 to 20 years, the same as if the jury had convicted the defendant of a third degree offense. The Supreme Court held: "*Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490 [120 S.Ct. at pp. 2362-2363], italics added.) The court *excepted* the fact of a prior conviction from this holding, because of the long tradition allowing sentencing judges to consider the defendant's recidivism. (*Id.* at p. 488 [120 S.Ct. at pp. 2361-2362].)

In *U.S. v. Tighe, supra,* 266 F.3d 1187, under a federal criminal sentencing statute, a defendant's having suffered prior convictions increased the prison term beyond the statutory maximum. The prior convictions were not required to be pleaded in a charging indictment, were not required to be proved beyond a reasonable doubt, and were not triable by a jury. One of the defendant's three prior convictions was a juvenile adjudication. Even though *Apprendi* excepted proof of prior convictions from its rule, a two-to-one majority of a Ninth Circuit Court of Appeals panel held that when the Supreme Court said "prior conviction" in *Apprendi,* it meant only a prior adult conviction. The *Tighe* majority concluded that in order to allow a sentencing judge in the current case to increase a sentence above the statutory maximum, based on a prior conviction and without notice, proof beyond a reasonable doubt or a jury trial *of the prior* in the current case, the prior conviction must itself have involved notice, proof beyond a reasonable doubt, *and a right to jury trial.* (*Tighe, supra,* 266 F.3d at pp. 1193-1195.)

*Apprendi* and *Tighe* have no direct application here. In both of those cases the fact that increased the defendant's sentence above the statutory maximum was not tried or proved by the usual criminal standards *in the trial of*

*the current case*, but was a factual finding solely by a sentencing judge ostensibly as a sentencing consideration. This is not at all like proof of a strike under California's Three Strikes law. ■ Under the Three Strikes law a qualifying prior conviction must, *in the current case*, be pleaded and proved (Pen. Code, § 667, subd. (c)), beyond a reasonable doubt (*People v. Garrett* (2001) 92 Cal.App.4th 1417, 1433 [112 Cal.Rptr.2d 643]; *People v. Tenner* (1993) 6 Cal.4th 559, 566 [24 Cal.Rptr.2d 840, 862 P.2d 840]), and the defendant has a statutory right to a jury trial, at least on the issue whether the defendant suffered the prior conviction (Pen. Code, § 1025, subds. (b), (c); *People v. Epps* (2001) 25 Cal.4th 19, 26-27 [104 Cal.Rptr.2d 572, 18 P.3d 2]). Because the context is so different, *Apprendi* and *Tighe* do not apply here. This is apparent from a footnote in *Tighe* distinguishing statutes under which prior convictions are determined by a jury or tried in the manner of elements of a crime. (*U.S. v. Tighe, supra*, 266 F.3d at p. 1192 & fn. 3.)

But even in its own context (prior convictions determined solely by a judge as a sentencing consideration), the *Tighe* majority opinion is unpersuasive, and we decline to follow or extend its reasoning in the context of the Three Strikes law. We agree with the *Tighe* dissent that the *Tighe* majority made a "quantum leap" from certain language in a Supreme Court opinion and erroneously concluded prior juvenile adjudications are not prior convictions. (*U.S. v. Tighe, supra*, 266 F.3d at p. 1200 (dis. opn. of Brunetti, J.).) As noted *ante, Apprendi excepts* prior convictions from its rule. (*Apprendi v. New Jersey, supra*, 530 U.S. 466, 488-490 [120 S.Ct. 2348, 2361-2362].) The *Tighe* majority (266 F.3d at pp. 1193-1194) focused on language in *Jones v. United States* (1999) 526 U.S. 227, 249 [119 S.Ct. 1215, 1227, 143 L.Ed.2d 311], a precursor of *Apprendi*, that stated "one basis" for distinguishing prior convictions is "a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt and jury trial guarantees." The *Tighe* majority concluded this was intended to state a "fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions." (266 F.3d at p. 1193.) The *Tighe* majority then concluded that since juvenile adjudications do not involve a right to jury trial, they cannot be included within the *Apprendi* exception for prior convictions. (*Id.* at p. 1194.)

We agree with the *Tighe* dissent that this language in *Jones* does not support such a broad conclusion. The dissent stated, "In my view, the language in *Jones* stands for the basic proposition that Congress has the constitutional power to treat prior convictions as sentencing factors subject to a lesser standard of proof because the defendant presumably received all the process that was due when he was convicted of the predicate crime. For

adults, this would indeed include the right to a jury trial. For juveniles, it does not. Extending *Jones'* logic to juvenile adjudications, when a juvenile receives all the process constitutionally due at the juvenile stage, there is no *constitutional* problem (on which *Apprendi* focused) in using that adjudication to support a later sentencing enhancement." (*U.S. v. Tighe, supra,* 266 F.3d at p. 1200 (dis. opn. of Brunetti, J.).)

A unanimous panel of the Eighth Circuit Court of Appeals also refused to follow the *Tighe* majority opinion in *U.S. v. Smalley* (8th Cir. 2002) 294 F.3d 1030, 1032-1033. It concluded that all the other procedural protections available in a juvenile court trial of a criminal charge are ample "to ensure the reliability that *Apprendi* requires," and the lack of a jury trial does not undermine the reliability of juvenile adjudications in any significant way. (*Id.* at p. 1033.) The court cited *McKeiver v. Pennsylvania, supra,* 403 U.S. 528, 547 [91 S.Ct. 1976, 1987], where the Supreme Court stated, "The imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the fact-finding function."

 This is the same reasoning and authority cited by the California Court of Appeal in *People v. Fowler, supra,* 72 Cal.App.4th 581, 586, stating, "Since a juvenile constitutionally—and reliably [citing *McKeiver*]—can be adjudicated a delinquent without being afforded a jury trial, there is no constitutional impediment to using that juvenile adjudication to increase a defendant's sentence following a later adult conviction."[2]

We conclude that *Tighe* does not apply nor should its reasoning be extended to this case and in the context of the Three Strikes law. *Fowler* is still good law notwithstanding *Tighe*.

. . . . . . . . . . . . . . . . . . . . . . . . . .*

## DISPOSITION

As to appellant Bowden, the judgment is modified to provide total credit of 204 days for time served, consisting of 178 days actual time and 26 days of conduct credit. As so modified, the judgment is affirmed.

As to appellant Webster, the judgment is modified to provide total credit of 204 days for time served, consisting of 178 days actual time and 26 days of conduct credit. As so modified, the judgment is affirmed.

---

[2]The *Fowler* opinion was decided before *Apprendi* or *Tighe*, but the court was aware of *Jones v. United States, supra,* 526 U.S. 227, and the *Fowler* court did not interpret *Jones* as does the *Tighe* majority. (*People v. Fowler, supra,* 72 Cal.App.4th at p. 586, fn. 2.)

*See footnote, *ante,* page 387.

As to appellant Tennant, the judgment is affirmed, except as to sentence as to which it is reversed, and the cause remanded with direction to either impose the enhancement under Penal Code section 667.5, subdivision (b) or to strike it in compliance with Penal Code section 1385, and to correct the award of conduct credit consistent with the views in this opinion.

Epstein, J., and Curry, J., concurred.

A petition for a rehearing was denied October 15, 2002, and the petition of appellant Vacarro Webster for review by the Supreme Court was denied December 11, 2002. Kennard, J., was of the opinion that the petition should be granted.