Filed 5/4/15  P. v. Wasson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C071430 |
| Plaintiff and Respondent, | (Super. Ct. No. CM028831) |
| v. | |
| JESSE MICHAEL WASSON, | |
| Defendant and Appellant. | |

For the third time, defendant Jesse Michael Wasson asks this court to overturn the trial court's denial of a motion to withdraw his plea, entered nearly 17 years ago, in case No. CM011579 (1998 matter).  He contends he was misinformed about the consequences of pleading to violating Penal Code section 422, making criminal threats, because he was told it was not a strike at the time and that it would not become a strike in the future. (Pen. Code, § 422; unless otherwise stated, statutory section references that follow are to the Penal Code.)  While it was true section 422 was not a strike when defendant agreed to plead no contest to the offense, nearly two years later the electorate passed Proposition 21, adding section 422 to the list of serious felonies in section 1192.7, subdivision (c).  (§ 1192.7, subd. (c)(38), amended by the electorate at the Mar. 7, 2000

1

Primary Election, operative Mar. 8, 2000.)  After Proposition 21, the offense qualified as a strike under California's Three Strikes Law.  (§§ 1192.7, subd. (c)(38); 667, subds. (b)-(i) & 1170.12.)

Like before, we again conclude defendant has failed to carry his burden of showing he is entitled to withdraw his plea.  We also find that even if defense counsel was ineffective in advising him section 422 would not be a strike in the future, we find the error harmless on this record.  We therefore again affirm the judgment.

FACTS AND PROCEEDINGS

A detailed recitation of the facts underlying defendant's offenses is unnecessary to resolve this appeal.  Briefly summarized, in April 2008, defendant was stopped by a law enforcement officer for a vehicle infraction.  Defendant got out of his car to submit to field sobriety tests and ran away when the officer told him he would be patted down for weapons.  The officer chased defendant, used his taser and defendant surrendered.  He was arrested and was carrying a loaded .9 millimeter gun.  Law enforcement obtained a search warrant and found methamphetamine manufacturing equipment and supplies in his garage and home as well as a gun case matching the gun defendant was carrying at the time of his arrest.

An information filed in July 2008 charged defendant with being a felon in possession of a firearm (former § 12021, subd. (a)(1) [now § 29800, subd. (a)(1) (Stats. 2010, ch. 711, § 6)] [count 1]); unlawful possession of ammunition (former § 12316, subd. (b)(1) [now § 30305, subd. (a)(1) (Stats. 2010, ch. 711, § 6)] [count 2]); possession of a controlled substance (methamphetamine) (Health & Saf. Code, § 11377, subd. (a) [count 3]); carrying a concealed weapon (former § 12025, subd. (a)(2) [now § 25400, subd. (a) (Stats. 2010, ch. 711, § 6] [count 4]); possession of concentrated cannabis (Health & Saf. Code, § 11357, subd. (a) [count 5]); manufacturing a controlled substance other than PCP (Health & Saf. Code, § 11379.6, subd. (a) [count 6]); and resisting,

2

obstructing, or delaying a peace officer (§ 148, subd. (a)(1) [count 7]). The information alleged various enhancements, including that defendant had two prior strikes, one of which was his section 422 conviction under the plea agreement in the 1998 matter. (§§ 667, subds. (b)-(i), 1170.12, subd. (b)(1) & 1192.7, subd. (c)(38).)

Defendant requested before trial that the court strike the special allegation that his section 422 conviction was a strike, or, in the alternative, to withdraw his plea in the 1998 matter. The trial court denied the motion, and defendant sought both appellate and writ relief in this court. We summarily denied the petition for writ of error *coram vobis* (*People v. Wasson* (Dec. 11, 2008, C060547)), and later issued an unpublished opinion affirming the trial court and finding defendant had failed to show he was entitled to withdraw his plea. (*People v. Wasson* (Oct. 15, 2009, C060108) 2009 Cal.App.Unpub. LEXIS 8239 (*Wasson I*).)

The case was tried without a jury and defendant was convicted of all charges. Prior to sentencing, defendant renewed his motion to withdraw his 1998 plea. Based on language in our unpublished decision, the trial court held a contested hearing to determine whether the change in law under Proposition 21 violated a significant term of defendant's plea bargain thereby depriving him of the benefit of his bargain. (See *Wasson I, supra,* 2009 Cal.App.Unpub. LEXIS 8239 at pp. *9-10.) Defendant, his counsel in the 1998 matter, and the prosecutor testified about the circumstances surrounding the plea.

Defendant's counsel admitted he had told defendant a section 422 conviction was not a strike at the time and would not be a strike in the future. Based on such advice, defendant claimed he agreed to the plea bargain. Had he known a section 422 conviction might be used as a strike in the future, he would not have pleaded no contest and instead would have insisted on going to trial.

While defendant's counsel acknowledged he and defendant had discussed future strikes, counsel testified that that was only one of many concerns defendant had before

3

agreeing to the plea bargain. Defendant was also greatly concerned about the length of any sentence and his ability to earn conduct credits while incarcerated. According to counsel, the "lynch pin" of the plea bargain was the prosecutor agreeing to strike defendant's strike for a prior section 459 conviction, which substantially shortened his sentence and allowed him to earn 50 percent credits rather than 20 percent credits if the strike was not stricken.

The prosecutor testified that he never promised or represented that a section 422 conviction could never be used as a strike in the future. Nor would he have ever made such an assertion.

Following the contested hearing, the court denied the renewed motion to withdraw the plea. The court found the plea bargain did not contain any promise that section 422 would not be a strike in the future. It also concluded defendant's counsel had not been ineffective when the plea was taken.

Defendant was sentenced to 25-years-to-life each for counts 1 through 6, and to a consecutive one-year term for count 7, together with various sentences for the prison priors and other alleged enhancements, which the court found true. Defendant timely appealed.

DISCUSSION

I

*Motion to Withdraw 1998 Plea*

Reiterating a claim made in his prior appeal, defendant asserts that the trial court erred in denying his motion to withdraw his no contest plea in the 1998 matter because he was misled about the consequences of pleading to a section 422 offense. (See *Wasson I, supra,* 2009 Cal.App.Unpub. LEXIS 8239 at p. *7 ["Defendant's argument is premised on the assertion that he was misinformed as to the consequences of his plea; he was told the section 422 offense to which he was pleading could not be used in the future as a

4

strike"].)  Defendant concedes that "there are no statements in either the written plea agreement or at the change of plea hearing which explicitly promise that violation of section 422 would not become a strike in the future."  Defendant, however, contends such a promise was *implied* because section 422 was not a strike when defendant pleaded guilty, and parties are deemed to incorporate then-existing law as a term of their agreement.

Respondent, on the other hand, argues that this court, in *Wasson I*, previously decided the legal issue of whether the trial court properly denied defendant's request to withdraw his plea in the 1998 matter.  Citing the doctrine of law of the case, respondent contends defendant is precluded from raising the issue again.

The doctrine of law of the case applies " ' "where, upon an appeal, the [reviewing] court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision . . . ." ' " (*People v. Turner* (2004) 34 Cal.4th 406, 417.)  The announced principle or rule of law " ' "becomes the law of the case . . . , both in the lower court and upon subsequent appeal . . . ." ' " (*Ibid.*)  Courts will not apply the doctrine " 'where its application will result in an unjust decision,' " however.  (*Ibid.*)

In *Wasson I*, we held that defendant did not carry his burden of showing he was entitled to relief from his plea because he failed to show he met the requirements of a writ of error *coram nobis*, including that he had been diligent in moving to withdraw his plea. We treated defendant's motion to withdraw his plea as a petition for such a writ because judgment had long since been pronounced in the 1998 matter.  (*People v. Quesada* (1991) 230 Cal.App.3d 525, 531, fn. 2, superseded by statue on other grounds [" 'a motion to set aside a judgment of conviction and for permission to withdraw a plea of guilty may ordinarily be considered as a petition for writ of error *coram nobis*' "]; § 1018 [upon a showing of good cause, a defendant may withdraw his guilty plea before the entry of judgment].)  (*Wasson I, supra,* 2009 Cal.App.Unpub. LEXIS 8239 at p. *4.)  We also discussed whether the change in law under Proposition 21 violated a significant term of

5

defendant's plea bargain, and, thus, ran afoul of due process. (*Id.* at pp. *10-11.) Because the record on appeal did not contain the specifics of defendant's 1998 plea bargain, we were unable to assess whether the change in law violated a significant term of the agreement. (*Id.* at p. *11.) It was this latter portion of our opinion that the trial court relied upon in conducting the contested hearing below.

Assuming for sake of argument that the law of the case doctrine does not apply--at least as to the issue of whether the change in law violated a significant term of defendant's plea bargain--we find the trial court did not err in denying defendant's renewed motion to withdraw his plea. Contrary to defendant's contention, the law existing when an accused pleads to an offense does not give rise to an implied promise that he will not be subject to future changes in the law.

In 2013, the Supreme Court addressed the issue in *Doe v. Harris* (2013) 57 Cal.4th 64 (*Harris*). There, the Supreme Court accepted the Ninth Circuit's request to address whether " '[u]nder California law of contract interpretation as applicable to the interpretation of plea agreements, does the law in effect at the time of a plea agreement bind the parties or can the terms of a plea agreement be affected by changes in the law?' " (*Id.* at p. 66.) The Supreme Court responded that "the general rule in California is that the plea agreement will be ' "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. . . ." ' " (*Harris, supra,* 57 Cal.4th at p. 66.)

The defendant in *Harris* entered into a plea agreement under which he agreed to plead nolo contendere to a single count of committing a lewd and lascivious act on a child under the age of 14 in exchange for the dismissal of several additional sexual charges. (*Harris, supra,* 57 Cal.4th at p. 66.) The agreement required the defendant to register as a sex offender under former section 290. (*Ibid.*) Although the statute at the time required persons convicted of specified sex offenses, including the offense to which

6

the defendant pleaded, to register and to provide their fingerprints and photographs, such information was not open for public review. (Former § 290, as amended by Stats.1989, ch. 1407, § 4, pp. 6191-6195.) That changed when the Legislature adopted "Megan's Law" (§ 290.46, added by Stats. 2004, ch. 745, § 1, pp. 5798-5803), which among other things, provided a means for the public to obtain the names, addresses, and photographs of the state's registered sex offenders. (*Harris, supra,* 57 Cal.4th at p. 66.) The law was expressly made retroactive and thus applicable to the defendant's conviction. (*Id.* at p. 67.)

In a subsequent federal lawsuit, the defendant argued his plea bargain contained an implied promise that the privacy protections contained in the law in effect at the time of his plea would govern his future obligations. (*Harris, supra,* 57 Cal.4th at p. 68.) Thus, the amended law's public notification provisions would violate his plea agreement. (*Id.* at p. 67.) The Supreme Court disagreed. (*Id.* at pp. 73-74.) The court found that "a plea agreement's reference to a statutory consequence attending a conviction, even when coupled with prosecutorial and judicial silence on the possibility the Legislature might amend the statute, does not give rise to an implied promise that the defendant, by pleading guilty or nolo contendere, will be unaffected by a change in the law." (*Id.* at p. 73.)

The same rule applies here. No implied promise exists in defendant's plea agreement that any future changes in the statutory consequences of pleading guilty to a section 422 violation would not affect him, including whether section 422 could be considered a future strike. In other words, parties like defendant are not insulated "from changes in the law that the Legislature has intended to apply to them." (*Harris, supra,* 57 Cal.4th at p. 66.) Considering Proposition 21's language and the statutory changes it implemented, such an intent is apparent.

Proposition 21 amended Penal Code section 1192.7 and added Penal Code sections 667.1 and 1170.125. (*People v. James* (2001) 91 Cal.App.4th 1147, 1149

7

(*James*).) When added, section 667.1 provided: " 'Notwithstanding subdivision (h) of Section 667, for all offenses committed on or after the effective date of this act, all references to existing statutes in subdivisions (c) to (g), inclusive, of Section 667, are to those statutes as they existed on the effective date of this act, including amendments made to those statutes by this act.' " (*Ibid.*) We note that section 667.1 has since been amended and currently provides: "Notwithstanding subdivision (h) of Section 667, for all offenses committed on or after November 7, 2012, all references to existing statutes in subdivisions (c) to (g), inclusive, of Section 667, are to those statutes as they existed on November 7, 2012."

Similarly, section 1170.125 provided: " 'Notwithstanding Section 2 of Proposition 184, as adopted at the November 8, 1994 General Election, for all offenses committed on or after the effective date of this act, all references to existing statutes in Section 1170.12 are to those statutes as they existed on the effective date of this act, including amendments made to those statutes by this act.' " (*James, supra,* 91 Cal.App.4th at p. 1149.) Proposition 21 took effect on March 8, 2000. (*Ibid.*) We further note that section 1170.125 has since been amended and currently provides: "Notwithstanding Section 2 of Proposition 184, as adopted at the November 8, 1994, General Election, for all offenses committed on or after November 7, 2012, all references to existing statutes in Sections 1170.12 and 1170.126 are to those sections as they existed on November 7, 2012."

These statutory provisions make clear that to determine whether a felony committed before the passage of Proposition 21 qualifies as a strike for purposes of any offenses committed *after* Proposition 21's effective date--like the offenses defendant committed in this case--one looks to the definition of serious or violent felonies when Proposition 21 went into effect. (*James, supra,* 91 Cal.App.4th at p. 1150 [applying Proposition 21's new statutory provisions to felonies committed before the effective date

of Proposition 21 does not violate the prohibition against ex post facto laws if the current felony offenses were committed on or after the effective date of Proposition 21].)

Treating defendant's section 422 conviction as a strike for purposes of the present case thus does not violate a significant term of his 1998 plea bargain since the agreement does not contain an implied promise that defendant's section 422 conviction could never be used as a future strike. The trial court, therefore, did not err in denying defendant's motion to withdraw his 1998 plea.

II

*Ineffective Assistance of Counsel*

Defendant next contends the trial court erred by denying his motion to withdraw his plea based on ineffective assistance of counsel. He argues his counsel in the 1998 matter was ineffective because counsel told him section 422 would not be considered a strike in the future since it was not a strike when defendant agreed to the plea bargain. Defendant claims that had he known a section 422 conviction could potentially have future strike consequences, he would not have pleaded no contest to the charges.

Even if defendant could establish ineffective assistance based on counsel's purported misadvice about the potential future consequences of a section 422 conviction, we conclude he has failed to demonstrate the requisite prejudice to justify withdrawing his plea. On that basis, we reject his claim. (*Strickland v. Washington* (1984) 466 U.S. 668, 697, 80 L.Ed.2d 674, superseded by statue on other grounds ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"] (*Strickland*).)

"A criminal defendant is constitutionally entitled to effective assistance of counsel." (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1418 (*Breslin*); U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland, supra,* 466 U.S. at p. 697.) To establish an ineffective assistance claim, defendant must show, by a preponderance of the

9

evidence: (1) that counsel's performance fell below the standard of a competent advocate; and (2) the deficient performance prejudiced the defendant. (*Breslin, supra,* 205 Cal.App.4th at p. 1418; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.)

Where, like here, a defendant challenges a guilty or no contest plea based on ineffective assistance of counsel, the prejudice requirement " 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.' " (*Breslin, supra,* 205 Cal.App.4th at p. 1419.) " 'In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial.' " (*Ibid.*; *In re Resdendiz* (2001) 25 Cal.4th 230, 253, abrogated on another ground in *Padilla v. Kentucky* (2010) 559 U.S. 356, 370-371, 176 L.Ed.2d 284.)

" 'In determining whether a defendant, with effective assistance, would have accepted [or rejected] the plea offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain.' " (*Breslin, supra,* 205 Cal.App.4th at p. 1421.) " '[A] defendant's self-serving statement . . . [regarding whether] with competent advice he or she *would* [or would not] have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims.' " (*Ibid.*)

In this case, defendant testified that he would not have accepted the plea had he known a section 422 conviction might be a strike in the future. Other evidence in the record, however, belies his self-serving statement.

10

For example, defendant's counsel testified that future strike consequences were merely one of many issues concerning defendant during the plea bargain process. Defendant was also concerned about the length of any prison sentence and wanted the 1998 matter to be resolved with him serving the least possible time and suffering the least severe consequences for his actions. Defendant also cared about whether any of the offenses were currently strikes.

Most importantly, however, defendant wanted stricken the special allegation that he had suffered a prior strike--a section 459 burglary conviction. Having his previous strike stricken allowed defendant to avoid having his sentence doubled under the three strikes law. (§§ 667, subd. (e)(1) and 1170.12, subd. (c)(1).) And, for purposes of earning credits, it also enabled him to serve only 50 percent of his sentence rather than the required 80 percent when an individual has a prior strike. (§§ 667, subd. (c)(5) and 1170.12, subd. (a)(5).)

This aspect of the agreement--the prosecutor agreeing to strike the section 459 strike--was described as the "lynch pin" of the bargain. Such a characterization coheres with defense counsel's statements during the sentencing hearing nearly 17 years earlier: "But of course, Mr. Wasson has a first degree burglary . . . the striking of which was the consideration for the plea."

The benefit of having the strike stricken was summed up as follows by the attorney who represented defendant regarding the 1998 prosecution: " . . . it's far more advantageous to have a plea that has fifty percent credits than having your sentence doubled and having to serve eighty percent of the time, only having twenty percent credits--can [sic] calculate that in my head but pretty significant." The prosecutor likewise confirmed the importance of this aspect of the agreement.

Had defendant proceeded to trial on the 1998 charges, and had the prosecution chosen to seek maximum penalties, defendant faced a total punishment of eight years eight months of incarceration with only 20 percent credits. The plea bargain reached

11

burdened defendant with only five years four months while earning 50 percent conduct credits--a significantly lower amount of time.

And had defendant been convicted of all charges, he still would find himself in the same predicament. In other words, a conviction following trial would have subjected him to the same strike consequences for the section 422 conviction in the present matter even though it was not a strike during the 1998 matter. (*James, supra,* 91 Cal.App.4th at p. 1150 ["We hold that if a defendant's current offense was committed on or after the effective date of Proposition 21, a determination whether the defendant's prior conviction was for a serious felony within the meaning of the three strikes law must be based on the definition of serious felonies in Penal Code section 1192.7, subdivision (c) in effect on March 8, 2000"].)

Nor has defendant adduced any evidence suggesting the prosecutor might have ultimately agreed to a plea that would have prevented the section 422 offense from being considered a strike in the future. (*In re Resendiz, supra,* 25 Cal.4th at p. 253-254 [petitioner failed to produce any substantial evidence that the prosecutor would have agreed to a plea allowing him to avoid adverse immigration consequences].) On the contrary, the prosecutor testified he never would have made defendant such an offer.

"In determining whether or not a defendant who has pled guilty would have insisted on proceeding to trial had he received competent advice, an appellate court also may consider the probable outcome of any trial, to the extent that may be discerned." (*In re Resdendiz, supra,* 25 Cal.4th at p. 254.) Based on our review of the record, we conclude defendant was unlikely to prevail at trial.

In the 1998 matter, defendant was charged with three counts: (1) making criminal threats (§ 422); (2) being a felon in possession of a firearm (former § 12021, subd. (a)); and (3) possession of methamphetamine. (Health & Saf. Code, § 11377, subd. (a).) Defendant's counsel acknowledged that he had no defense to the felon in possession and methamphetamine charges, and that the special allegations regarding a prior strike and

12

prior prison term would have been found true. Although defendant believed he had a necessity defense against the section 422 charge, his attorney did not agree. Comparing the elements of a necessity defense to the facts underlying defendant's section 422 conviction confirms the unavailability of such a defense.

Necessity is an affirmative defense recognized based on public policy considerations. (*People v. Kearns* (1997) 55 Cal.App.4th 1128, 1134-1135.) To establish the defense of necessity, a defendant must present evidence sufficient to show that he "violated the law (1) to prevent a significant and imminent evil, (2) with no reasonable legal alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief that the criminal act was necessary to prevent the greater harm, (5) with such belief being objectively reasonable, and (6) under circumstances in which she did not substantially contribute to the emergency." (*Id.* at p. 1135.)

The section 422 charge in the 1998 matter was based on defendant threatening to kill his ex-girlfriend while holding a gun to her head. According to documents in the record, defendant showed up at her residence, followed her into the house, kicked in the bathroom door after she had locked herself inside, and slapped her causing a black eye. He threatened to kill her multiple times, many of which the victim recorded after contacting the police. Defendant claimed he took such actions because the victim had threatened and bothered his new girlfriend.

Even if we were to view the evidence in the light most favorable to defendant, the record reveals no exigent circumstance requiring him to go over to the victim's house, follow her inside, and break down the bathroom door then threaten to kill her while holding a gun to her head. Instead, defendant could and surely should have taken the reasonable legal alternative of contacting the police to report the victim's alleged actions and then let law enforcement handle the issue if in fact he was concerned on behalf of his new girlfriend. The defense of necessity, then, would have been unavailing had defendant gone to trial. (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1035-1036 [felon

13

defendant's explanation for possessing a firearm, even if believed by the jury, insufficient as a matter of law to establish defense of necessity].)

Defendant fails to persuade us that he would have rejected the distinctly favorable outcome he obtained by entering into the plea agreement, and would instead have insisted on proceeding to trial, had he known that his section 422 conviction might conceivably be declared a strike sometime in the future. (*In re Resendiz, supra,* 25 Cal.4th at p. 254 [petitioner failed to show how he might have been able to avoid conviction or what specific defenses might have been available to him at trial].) We are convinced beyond a reasonable doubt that defendant would have agreed to the favorable plea bargain even if he had been informed that his section 422 conviction could possibly be used as a strike if the law changed in the future. This is especially so since any change in the law regarding section 422 would only affect defendant if he committed future crimes--something we noted in *Wasson I* as being entirely within defendant's control. (*Wasson I, supra,* 2009 Cal.App.Unpub. LEXIS 8239 at pp. *11-12 [" . . . here the change making defendant's 1998 section 422 conviction a strike will have no effect unless and until defendant is convicted of a felony. The change simply punishes defendant's recidivism, a matter within defendant's control"].)

DISPOSITION

The judgment is affirmed.

                                              HULL            , Acting P. J.

We concur:

     ROBIE          , J.

     MAURO        , J.